**Paige B. BAYOUD, Appellant,**

**v.**

**SHANK, IRWIN & CONANT, Appellee.**

**No. 05–88–00688–CV.**

Court of Appeals of Texas,
Dallas.

June 7, 1989.

Rehearing Denied July 21, 1989.

Pat W. Davis, Dallas, for appellant.

Boyd Waggoner, David M. Pruessner, Lisa A. Stegall, Dallas, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

HOWELL, Justice.

The law firm of Shank, Irwin & Conant (Law Firm) filed suit against appellant Paige Bayoud (Client) to collect attorneys' fees incurred in representation of Client in several matters. Client counterclaimed asserting malpractice. The jury found for Law Firm and awarded $102,000 on the collection claim and $20,000 in attorneys' fees; the trial court granted Law Firm an instructed verdict on the malpractice counterclaim, and Client does not contest that action on appeal. In this Court, Client asserts (1) that the trial court erred in refusing to submit requested instructions and jury questions and (2) that the evidence was factually insufficient to support the jury questions as submitted. We disagree; therefore, we affirm the trial court's judgment.

Client, a Dallas-area physician, practiced medicine with his brother, George Bayoud (Brother); Client also formed a corporation in connection with this medical practice, North Central Investment Corporation (NCIC). Brother subsequently filed suit against Client to recover his interest in NCIC, and Client asked Law Firm to represent him on appeal (brothers' lawsuit). In addition, Client had been sued by another local physician, a Dr. Howard Sigler, and requested that Law Firm represent him in matters involving that litigation (Sigler lawsuit). Further, Client asked Law Firm to represent him in a claim by the Internal Revenue Service for more than $100,000 in unpaid taxes (tax matter). After trial in the brothers' lawsuit, Client discharged Law Firm and later refused to pay its fees. The instant lawsuit resulted.

In points of error one and two, Client argues that the trial court erred in refusing to submit the following two requested jury questions:

SPECIAL ISSUE NO. 1:

Do you find from a preponderance of the evidence that Plaintiff Shank, Irwin & Conant agreed to look to the corporation (NCIC) for payment of its attorneys' fees for services on behalf of such corporation and to its officer, Paige B. Bayoud?

Answer "YES" or "NO."

If "YES," then answer:

SPECIAL ISSUE NO. 2:

What sum of money, if any, do you find from a preponderance of the evidence represents those attorneys' fees due Plaintiff Shank, Irwin & Conant were attributable to services performed by Plaintiff for or on behalf of NCIC and its officer.

Answer in Dollars and Cents, if any.

ANSWER: $_____

By point three, Client asserts error in the refusal of these requested instructions:

You are instructed that in answering the foregoing special issues you are to be guided by the following instructions:

A) A corporation is a separate and distinct legal entity that can incur debts on its own behalf.

B) Absent an agreement with a creditor to be responsible for a particular corporate debt, an officer, director and/or shareholder of the corporation is not personally liable for such corporate debt regardless of the office held or percentage of stock owned.

The trial court noted its refusal on each of Client's requests. Instead of submitting Client's requested issues and instructions, the court's charge limited the jury's inquiry to attorneys' fees incurred by Law Firm solely in its representation of Client individually:

ISSUE NO. 1

What sum of money, if any, do you find from a preponderance of the evidence would be reasonable and necessary attorney's fees and expenses due for the services of Plaintiff, Shank, Irwin & Co-

nant, in representing the Defendant, Paige Bayoud, M.D.?

Answer in dollars and cents if any.

Client maintains that the trial court was required to submit his questions and instructions because his affirmative defense that NCIC was liable for the fees was raised by the pleadings and evidence. TEX.R.CIV.P. 279. When, however, the evidence and testimony conclusively establishes or negates a claim, the trial court does not err in refusing to submit the requested issue. *See, e.g., Terminix Int'l, Inc. v. Lucci,* 670 S.W.2d 657, 665–66 (Tex. Civ.App.—San Antonio 1984, writ ref'd n.r.e.) (evidence conclusively established issue; submission to jury not required); *Wiley v. Browning,* 670 S.W.2d 729, 733 (Tex. App.—Tyler 1984, no writ) (court can assume facts conclusively established by evidence); *Yancey v. Olvera,* 518 S.W.2d 935, 942 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.) (record established fact as matter of law; no jury issue required).

In the instant case, Client testified at trial that he was acting on behalf of NCIC and that Law Firm had agreed to look to NCIC for payment of its attorneys' fees. This bare assertion, however, does not mandate submission of a fact issue to the jury. Law Firm introduced substantial evidence and testimony that Client sought representation for his personal legal matters only. First, Law Firm introduced the engagement letter between Client and Law Firm which was addressed to Client—not NCIC—and mailed to Client's home address. The letter does not mention NCIC and provides in pertinent part:

> This will further acknowledge that we are undertaking to represent *you* in connection with the litigation in which *you* are currently involved. Our fee for these services will be based upon an hourly charge in amounts varying depending upon the attorney who is actually doing the work. Our initial billings will be credited to the retainer *you* have today paid.

(Emphasis added.) Client admitted at trial that the $10,000 retainer was to apply to his personal legal matters only.

Texas contract law provides that for an agent to avoid liability for his signature on a contract, he must *disclose* his intent to sign as a representative of the principal to the other contracting party. Uncommunicated intent will not suffice. *Seale v. Nichols,* 505 S.W.2d 251, 255 (Tex. 1974). Our Court has stated that a law firm's engagement letter is the controlling contract when a dispute arises over attorney's fees. *See Shank, Irwin, Conant & Williamson v. Durant, Mankoff, Davis, Wolens & Francis,* 748 S.W.2d 494, 499–500 (Tex.App.—Dallas 1988, no writ). When neither party claims the engagement letter is ambiguous, we may not consider parol evidence of fee discussions that occurred prior to the engagement letter. *Shank, Irwin v. Durant, Mankoff,* 748 S.W.2d at 499.

In the present case, the engagement letter did not reflect any intent by Client to engage legal representation on behalf of some principal, presumably NCIC. One of Law Firm's senior partners testified at trial that had the parties agreed to look to NCIC for payment of legal fees, rather than to Client, the engagement letter would have reflected that agreement. Client was bound by the terms of the engagement letter holding him liable for the fees, and no testimony about prior oral discussions regarding the fee arrangement can be considered by this Court.

In addition, the trial court was careful to segregate the claim so that the jury would decide the amount of Client's individual attorneys' fees only. Therefore, even assuming, *arguendo,* that NCIC had incurred some legal fees, the jury's *only* task was to decide the amount of fees owed to Law Firm by Client *individually.* The record reflects that each of the three cases in which Law Firm performed legal services involved Client individually: the tax matter involved Client's dispute with the IRS over personal tax liability; the Sigler lawsuit involved a slander claim filed against Client individually; and the dispute between the two brothers over ownership of NCIC involved the corporation peripherally, but Brother and Client were the real parties in

interest. *See Bayoud v. NCIC,* 751 S.W.2d 525, 527 n. 3 (Tex.App.—Dallas 1988, no writ). Thus, we hold that the requested questions and instructions were immaterial as a matter of law. The trial court did not err in refusing them. We overrule points one through three.

By his last two points of error, Client claims that the evidence was insufficient to support the jury's answers to the submitted questions. Question one required a determination of the reasonable fees and expenses owed to Law Firm by Client, and question two sought reasonable attorney's fees for Law Firm's counsel in the collection action. In reviewing a factual insufficiency claim, we must consider all of the evidence in the record relevant to the fact being challenged; we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may not substitute our judgment for that of the factfinder, even if we would reach a different result from the same evidence. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ In the instant case, Law Firm presented extensive testimony about its attorneys' fees in each of the three matters involving Bayoud. Al Conant, a senior partner at Law Firm, explained extensively to the jury the manner in which Client's legal work was distributed to lawyers of differing experience levels and billing rates to save Client money. He discussed Law Firm's overhead and billing procedures. Conant testified that the average hourly rates billed to Client were lower than Law Firm's customary rates. He also said that some of the hours billed by less experienced attorneys were deleted from the final bill if, in his opinion, the attorneys spent too much time on a matter.

Conant, who worked mainly on the brothers' lawsuit, stated that Client's lawsuit required more attention than the usual case because Client constantly mailed letters, self-generated research and cases, and other correspondence to Law Firm; these inquiries had to be answered. He also noted that often Client would not understand some aspect of the case, and lawyers were forced to give Client repeated explanations. In sum, he stated that considering all of these factors, the time expended and fees charged by Law Firm were not excessive but were instead reasonable, necessary, and customary.

Another of Law Firm's senior partners, Cecil Casterline, testified mainly about the Sigler lawsuit. He concluded that the time and charges in that case—largely for post-trial motions, research, and appellate work—were not excessive or duplicative. A former associate of Law Firm, Dorothy Vidal, also testified about the Sigler lawsuit. She stated that Law Firm's hourly fees were comparable to other Dallas-area firms, and that all the legal work performed was necessary to have the Sigler judgment set aside. To the extent the time was possibly excessive, she said, it was in responding to Client's frequent requests and correspondence. As for the brothers' lawsuit, Vidal agreed that the work completed was necessary and not duplicative.

Client's expert witness, Michael Weston, testified that he went through the entire case file in the brothers' lawsuit and examined all of Law Firm's available time sheets and bills before he formed an opinion.[1] Weston stated that, in his opinion, the time spent by Law Firm was excessive, the charges were not reasonable, and that personnel were overutilized and inadequately supervised. On cross-examination, Weston conceded that a determination of what legal work is "necessary" is a matter of judgment of the lawyers working on a case. He also admitted that when large amounts of money were involved, as in the brothers' $2–3 million lawsuit, lawyers generally worked harder and performed more research.

1. Weston said he reviewed Law Firm's fees and expenses in light of the eight State Bar guidelines for determining a "reasonable" fee. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. X, § 9 (Code of Professional Responsibility) DR 2-106(B) (1988).

Based on our review of the record, we conclude that the evidence supports the jury questions as submitted and answered. We cannot hold that the jury's answers were so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Law Firm's witnesses testified that the total fees owed by Client were approximately $127,000, while Client's witness estimated approximately $77,000. The jury as factfinder was entitled to determine the credibility of the witnesses. Its verdict of $102,000 is supported by the evidence. We overrule point four.

■ As to the sufficiency of the evidence to support Law Firm's attorney's fees for the collection suit itself, we also conclude that the evidence was sufficient to support the jury's verdict. Law Firm's counsel, Boyd Waggoner, testified as to the number of hours billed and otherwise substantiated the amount of his claimed fee. Waggoner said that based on an hourly rate, he had accrued approximately $19,000 in fees; or, using a one-fourth contingent fee basis, he would be entitled to $25,000. He further stated that the charges were reasonable, necessary, and customary. Again, the jury was entitled to make credibility decisions. As the $20,000 award is supported by the evidence, we overrule Client's final point of error.

We AFFIRM the trial court's judgment.