**SOUTHWESTERN BELL MEDIA, INC., Appellant,**

v.

**Elliot L. TREPPER, d/b/a Dallas Building Systems, Appellee.**

**No. 05–88–01473–CV.**

Court of Appeals of Texas, Dallas.

Nov. 20, 1989.

Rehearing Denied Jan. 12, 1990.

Susan Minton, Michael W. Dunagan, Dallas, for appellant.

John D. Exline, Matthews & Griswood, Dallas, for appellee.

Before HOWELL, LAGARDE and KINKEADE, JJ.

## OPINION

LAGARDE, Justice.

Southwestern Bell Media, Inc. (Bell) sued Elliot L. Trepper, doing business as Dallas Building Systems, for breach of contract. Trepper attempted to avoid liability on the contract by claiming that he was the agent for Innovative Metal Building Concepts, Inc., doing business as Dallas Building Systems. Bell now appeals an adverse judgment and raises six points of error. We sustain Bell's first two points of error.

Prior to the making of the contract in question, Southwestern Bell Telephone Company[1] entered into at least one written Yellow Pages advertising contract with "Dallas Building Systems." That contract was dated January 23, 1984, and was signed by Michael Irvin on the line marked "Applicant (Customer or Authorized Agent)." Irvin showed his title to be "P. Owner," as appears underneath the signature line marked "Title" beside Irvin's signature. Above the line marked "Title" and next to the preprinted word "Contract" appeared the typed words "J. Gonzales & M. Irvin." Near the top of the contract appear the words "Dallas Building Systems, 2511 N. Walton Walker, Steel Fabricators" alongside a telephone number "688–1698."

The two contracts on which Bell sued Trepper contained the wording "Dallas Building Systems, 2511 N. Walton Walker, Steel Fabricators" alongside a telephone number "688–1698" near the top of the contracts. The first of the two contracts was dated May 8, 1985, and the second was dated April 15, 1986. Trepper signed his name on the two contracts on the line marked "Advertiser," showing his title to be "President." Below Trepper's signature on both contracts appears preprinted language stating that the "advertiser warrants that he personally or as agent has the authority to request and agree to pay for such advertising." At trial, Bell judicially admitted that this contract language was an acknowledgement by Bell that the person signing the contract form in the space above the word "advertiser" could sign the contract solely as an agent for the advertiser without agreeing to be personally liable for the cost of the advertising.

At the time of the execution of the two contracts on which Bell sued, Dallas Building Systems was a name being used by a corporation called Innovative Metal Building Concepts, Inc. Innovative Metal Building Concepts, Inc. also did business under the name Dallas Building Systems Co., as evidenced by an assumed name certificate filed in the Dallas County assumed name records on January 27, 1986.[2] Innovative Metal Building Concepts, Inc. was incorporated on October 29, 1984. Mike Irvin was president of Innovative Metal Building Concepts, Inc. Dallas Building Systems was also a name being used by a partnership calling itself both Dallas Building Systems Company and Dallas Building Systems Co. Its partners included Mike Irvin.

Trepper was part owner and president of Pebcor Corporation. In approximately March 1985, Dallas Building Systems, through Michael Irvin, requested Pebcor Corporation, a company of which Trepper was part owner and president, to act as a consultant to Dallas Building Systems. It was through this consulting relationship between Dallas Building Systems and Pebcor that Michael Irvin, the president of Innovative Metal Building Concepts, Inc., gave authority to Trepper to sign the Yellow Pages contracts as President of Dallas Building Systems. Trepper testified at trial that he believed he was signing the contracts on behalf of Innovative Metal Building Concepts, Inc. doing business as Dallas Building Systems.

---

1. Bell maintains that it is a separate and distinct entity from Southwestern Bell Telephone Company.

2. We note that the date on which the assumed name certificate was filed was after Trepper signed the first contract but before Trepper signed the second contract.

At trial, Trepper further testified that he indicated he was signing on behalf of Dallas Building Systems by writing the word "President" above the line marked "Title" alongside his signature. Trepper stated that he did not intend to be personally bound when he signed the contracts for Dallas Building Systems and signified that to Tom Gilmour, the sales representative of Bell, by signing the contracts as "President." Trepper testified that he signed the contracts in question and designated his title on the contracts as "President" in the presence of Gilmour. At the time the contracts were executed, Gilmour met with Trepper at Pebcor's office at 2002 Quincy in Dallas, which was a different address than Dallas Building Systems' office at 2511 N. Walton Walker. Trepper stated that at the time of the signing of the first contract in May 1985, Gilmour asked why the meeting was at Pebcor's office and that he explained to Gilmour Pebcor's consulting relationship with Dallas Building Systems.

Gilmour testified that he did not know that Trepper was an agent for Innovative Metal Building Systems, Inc. He stated that he understood that Dallas Building Systems was buying the advertising but that he did not consider whether Trepper was agreeing to be personally liable because "it's not something that a sales rep usually worries about when he's out in the field." Gilmour testified that although Trepper wrote his title on the contracts as "President," Gilmour thought that Dallas Building Systems was probably incorporated, but that it was also possible that Dallas Building Systems was a partnership or a sole proprietorship. Gilmour stated that if Trepper had written "Owner" on the line used to identify the signing party's "title", he would have thought that Trepper was personally responsible. Gilmour further testified that in connection with the first contract Trepper signed, Bell must have obtained a credit application which asked whether the advertiser was a sole proprietorship, partnership, or corporation because the contract represented a substantial increase in the cost of advertising over the previous year's contract; however, Bell did not produce a credit application in response to a request for production calling for such documents.

Bell's billing records show that the billing account for the Dallas Building Systems' advertising charges was maintained by Bell under the name and address "J. Gonzales & M. Irvin, Ptnrs dba Dls Bldg Sys, 2511 N. Walton Walker, Dallas, TX 75212." The wording "Ptnrs dba Dls Bldg Sys" meant partners doing business as Dallas Building Systems. Bell never sent any bill or invoice to Trepper for the Dallas Building Systems Yellow Pages advertisements, and Trepper's name does not appear in Bell's billing records for the Dallas Building Systems' advertising. During several meetings between Trepper and the Bell representative in approximately May or June 1987 about the 1987–1988 Yellow Pages advertisement for Pebcor Corporation, the Bell representative inquired of Trepper about the Dallas Building Systems account (which was almost a year delinquent) but neither asked nor demanded that Trepper pay the account nor suggested to Trepper that Bell considered Trepper to be liable for the account.

In its first two points of error, Bell asserts that the trial court erred in overruling its objection to the submission of jury question number one because it improperly placed upon Bell the burden to negate Trepper's affirmative defense of agency and because it omitted material elements of that defense. Specifically, Bell maintains that Trepper, to avoid liability for his signature on a contract, must have disclosed to the other contracting party both his intent to sign as a representative and the identity of his principal. Bell also contends that the use of a trade name is not a sufficient disclosure of the identity of the principal or of the fact of agency. *See Lachmann v. Houston Chronicle Publishing Co.*, 375 S.W.2d 783, 785 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.). Thus, Bell argues that because Trepper filed an answer alleging that he signed the contracts in a representative capacity only, Trepper had the burden of proving his affirmative defense of agency and of obtaining jury findings

that the agency existed and that the agency was disclosed. *See Glendon Invs., Inc. v. Brooks*, 748 S.W.2d 465, 467 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Bell asserts that the following question submitted to the jury improperly placed the burden of proof on Bell:

> Do you find from a preponderance of the evidence that Southwestern Bell Media, Inc., and Elliot L. Trepper entered into one or more contracts for Southwestern Bell Media, Inc., to provide advertising services for Elliot L. Trepper, and that Elliot L. Trepper agreed to pay for such services?

The jury answered "No." Bell's timely objection to the question, that "it's objectionable because the agreements on their face show a contract, and that the true issue for determination by the jury, if any, is whether or not Elliot Trepper adequately disclosed his agency and principal" was overruled. Bell also offered alternative issues on the disclosure of agency and principal and requested a definition and instruction on agency. Specifically, as alternative issues, Bell requested that the following questions be submitted to the jury:

> Do you find from a preponderance of the evidence that the contracts disclosed the agency, if any, of Elliot Trepper.
>
> Do you find from a preponderance of the evidence that Elliot Trepper disclosed the principal, if any, Elliot Trepper was signing on behalf of.

Further, Bell requested that the jury be instructed "that a person signing a contract is liable unless an agency is disclosed," and that an "[a]gency relationship is a relationship in which there is consent by one person to another to act on the former's behalf." We conclude that Bell properly preserved error regarding the submission of jury question number one and Trepper's failure to submit an issue on disclosure. *See Morris v. Holt*, 714 S.W.2d 311, 312 (Tex.1986); *Clarostat Mfg., Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 795 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.); TEX.R.CIV.P. 278. Trepper waived his affirmative defense of agency. *See* TEX.R.CIV.P. 279.

▮▮▮ Before addressing Bell's points of error, we note that it is well settled that the law does not presume agency. *Lachmann*, 375 S.W.2d at 785. As explained in *Mahoney v. Pitman*, 43 S.W.2d 143, 146 (Tex.Civ.App.—Amarillo 1931, writ ref'd):

> *It is the duty of the agent,* if he would avoid personal liability on a contract entered into by him on behalf of the principal, *to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal,* as the person dealt with is not bound to inquire whether or not the agent is acting as such for another.

Thus, an agent, who fails to disclose the fact of his agency to a third party with whom he contracts, may be held personally liable on the contract. *Glendon*, 748 S.W.2d at 467, *citing Heinrichs v. Evins Personnel Consultants, Inc. Number One*, 486 S.W.2d 935, 937 (Tex.1972); *see also Bayoud v. Shank, Irwin & Conant*, 774 S.W.2d 22, 24 (Tex.App.—Dallas 1989, no writ). This is true even though the agent has disclosed *a* principal but has failed to disclose the *true* principal. *See Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 69 (Tex.App.—San Antonio 1988, writ denied); *A To Z Rental Center v. Burris*, 714 S.W.2d 433, 436–37 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Carter v. Walton*, 469 S.W.2d 462, 470–71 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); *Lachmann*, 375 S.W.2d at 785. Therefore, disclosure is an essential element of the affirmative defense of agency in order to avoid personal liability on a contract. *Glendon*, 748 S.W.2d at 467. Moreover, the agent is not relieved from personal liability merely because the person with whom he dealt had a means of discovering that the agent was acting in a representative capacity, and "knowledge" of the real principal, irrespective of the source, is the test, which does mean actual knowledge, not suspicion. *See Anderson v. Smith*, 398 S.W.2d 635, 637 (Tex.Civ.App.—Dallas 1965, no writ); *Burris*, 714 S.W.2d at 435. In this instance, it is undisputed that Trepper signed the two contracts on which Bell sued. It is also undisputed that Trepper signed in a representa-

tive capacity as evidenced by his signature on the contract.[3]

The rule concerning the burden of proof on the agency defense is as follows:

> [W]here one is sought to be held personally liable on a contract, and his defense rests on the ground that he made the agreement as the agent of another, that person has the burden of proving all material facts necessary to exonerate him from personal responsibility. More specifically, he must show that he was, in fact, acting as the agent of his principal in making the contract, *that he had informed the other party to the agreement of his true legal status in the matter, and that he had also disclosed to that other party the name of the alleged principal for whom he was purportedly acting.*

*Id.*, citing 3 TEX.JUR.3d § 226, p. 310 (1980) (emphasis original).

Trepper argues that he, in fact, did not have to assert an affirmative defense since Bell failed to present a prima facie case. Trepper maintains that the contracts themselves unambiguously show that because he signed in a representative capacity and disclosed his principal, Dallas Building Systems, he is not individually liable. Thus, Trepper asserts that the issue of liability is to be decided as a matter of law. In the alternative, Trepper contends that if the contracts are ambiguous, he is, nevertheless, free of individual liability because all of the evidence established that both Bell and Trepper understood and intended that Trepper would not be individually liable.

▄▄▄▄ The law makes no presumption of agency. *Lachmann*, 375 S.W.2d at 785. Therefore, to avoid personal liability, an agent has two duties. He must: (1) disclose his representative capacity, and (2) identify his true principal. *A to Z Rental,*

714 S.W.2d at 435. A trade name inadequately discloses the fact of agency or the identification of the true principal. *See Lachmann* at 785. Even though by signing as president, Trepper may have fulfilled his first duty, he, nevertheless, failed in his second duty because he did not disclose his true principal. Failing to fulfill both of his duties necessary to avoid personal liability, Trepper assumed personal liability when he signed the contract. Furthermore, Trepper failed to submit a jury question on the issue of disclosure.

Although Trepper cites a number of cases,[4] all decided on a case-by-case basis, wherein the courts have held in favor of the agent under circumstances somewhat similar to the situation at hand, these cases are all factually distinguishable. Thus, we conclude that disclosure, in this instance, was a question of fact to be decided by the trier of fact. We further conclude that jury question number one was insufficient to constitute a submission of disclosure. *See Glendon*, 748 S.W.2d at 467 (the issue "[d]o you find from a preponderance of the evidence that [defendant] agreed to pay [plaintiff], acting for [company], part of any fee received by [defendant] from the sale of the [property] in question?" was held to be insufficient to constitute the issue of disclosure). Moreover, the wording of jury question number one failed to require the jury to either expressly or implicitly find whether Trepper had disclosed that he was acting as an agent for Innovative Metal Building Concepts, Inc. We sustain Bell's first and second points of error.

Because we hold that the trial court improperly refused to submit an issue on disclosure, and, thus, reversible error was committed, it is not necessary to the disposition of this appeal that we address all of Bell's remaining points of error. TEX.R. APP.P. 90(a).

---

**3.** However, a question arises as to whether Trepper accurately communicated his representative capacity since he was not the president of Dallas Building Systems. In fact, he was signing on behalf of the president of Dallas Building Systems.

**4.** *Johnson v. Armstrong*, 83 Tex. 325, 18 S.W. 594 (1892); *Shelton v. Montoya Oil & Gas Co.*, 292

S.W. 165 (Tex.Comm'n App.1927, judgment adopted); *Joyner v. Alban Group, Inc.*, 541 S.W.2d 292 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *American Appraisal Co. v. Constantin*, 98 S.W.2d 1003 (Tex.Civ.App.—Fort Worth 1936, no writ); *Veazie v. Beach Plumbing & Heating Co.*, 235 S.W. 695 (Tex.Civ.App.—Fort Worth 1921, no writ).

Based on the record before us, we conclude, as a matter of law, that the parties did enter into a contract for advertising and that Trepper agreed to pay for the advertising. Because Trepper failed to obtain affirmative jury findings on his defense of disclosed agency, he is individually liable. Accordingly, the judgment of the trial court is reversed, and judgment is rendered against appellee Elliot Trepper, individually and d/b/a Dallas Building Systems.