TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00515-CV






Leonard H. Ekberg, Appellant



v.



Bob Barnes, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 248,739, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING






 Appellee Bob Barnes sued appellant Leonard Ekberg for breach of contract to recover
a $17,000 loan that Barnes made to Ekberg. Following a bench trial, the trial court entered judgment
for Barnes in the amount of $17,000, plus attorney's fees. By two issues presented, Ekberg appeals
the judgment. We affirm the trial court's judgment.


BACKGROUND

 Ekberg was president and sole owner of JKL, Inc. General Contractors ("JKL"), a
Texas corporation in the business of hauling equipment. Barnes ran an excavation enterprise and
occasionally conducted business with JKL. On May 24, 1999, Ekberg asked Barnes for a $17,000
loan so that he could make payroll for JKL, which was experiencing financial trouble. Barnes was
not in the business of lending money and did not request any interest or fee for the loan. (1) Barnes
agreed to assist Ekberg. Thereafter, a JKL representative picked up the loan proceeds from Barnes
and in return, left a check made out to Barnes, drawn on JKL's account for the full amount of the
loan. Because he did not have sufficient funds on hand, Ekberg asked Barnes to wait a few days
before depositing the JKL check. As requested, Barnes delayed a few days before depositing the
check, but upon deposit the check did not clear. Barnes made several attempts to collect repayment
of the loan, but to no avail.

 On August 2, 1999, JKL petitioned for bankruptcy relief. Barnes was listed as an
unsecured creditor for a debt in the amount of $17,300--an amount substantially equivalent to the
loan Barnes had made to Ekberg. (2) Although Barnes received notice of the bankruptcy filing, he took
no action in response. Subsequently, any debt JKL might have owed to Barnes was discharged.

 On December 9, 1999, Barnes sued Ekberg for breach of contract to recover the
borrowed money. At trial, Ekberg asserted that he was acting as an agent for JKL when he asked
to borrow the $17,000, and that Barnes was aware of his agency status. In support of his argument,
Ekberg pointed to the fact that Barnes had made the loan check payable to JKL and that the check
left for repayment of the loan was drawn on JKL's account. Barnes, on the other hand, testified that
he agreed to lend the funds to Ekberg, personally based on his friendship with Ekberg.

 The trial court found in favor of Barnes and accordingly rendered judgment for the
full amount of the loan, plus attorney's fees. Subsequently, the trial court entered findings of fact
and conclusions of law in which it found that the parties had agreed that Barnes would lend Ekberg
$17,000, interest free, for a period of a few days; Barnes did lend Ekberg $17,000; and Ekberg failed
to repay the loan despite receiving a demand to repay it. 


DISCUSSION

 By his second issue, Ekberg challenges the legal sufficiency of the evidence, arguing
that "the evidence conclusively establishes that [the] Barnes loan was made to a bankrupt corporation
of which [Ekberg] was the president." We disagree.

 A trial court's findings of fact are reviewable for legal sufficiency of the evidence by
the same standard that is applied in reviewing the legal sufficiency of the evidence to support a jury
verdict. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). The standard is two-fold: first, the record must be examined for evidence that supports the finding, while ignoring all
evidence to the contrary; and second, if there is no evidence to support the finding, the entire record
must then be examined to see if the contrary proposition is established as a matter of law. Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).

 Ekberg challenges the trial court's finding that he contracted with Barnes individually
rather than as an agent for JKL, arguing that his agency status was established as a matter of law. 
A person who contracts with another while acting as an agent for a disclosed principal does not bind
himself to the contract and is not personally liable on the contract. A to Z Rental Ctr. v. Burris, 714
S.W.2d 433, 435 (Tex. App.--Austin 1986, writ ref'd n.r.e.). It is well settled that the law does not
presume agency, and the purported agent bears the burden of proving this affirmative defense. 
Southwestern Bell Media, Inc. v. Trepper, 784 S.W.2d 68, 71 (Tex. App.--Dallas 1989, no writ);
Lachmann v. Houston Chronicle Publishing Co., 375 S.W.2d 783, 785 (Tex. Civ. App.--Austin
1964, writ ref'd n.r.e.). To avoid personal liability, an agent has the burden of proving: (1) that he
disclosed his representative capacity in the matter and (2) that he identified his true principal. 
Trepper, 784 S.W.2d at 72. The disclosure must be made at the time the parties enter into the
contract. Posey v. Broughton Farm Co., 997 S.W.2d 829, 832 (Tex. App.--Eastland 1999, pet.
denied). Moreover, an agent is not relieved from personal liability merely because the other party
to the contract had a means of ascertaining that the agent was acting in a representative capacity. 
Trepper, 784 S.W.2d at 71. Actual knowledge of the principal is the real test; the other party's
suspicion is not sufficient. Id. 

 The issue of disclosure is a question of fact. Lacquement v. Handy, 876 S.W.2d 932,
939 (Tex. App.--Fort Worth 1994, no writ). Where conflicting evidence is presented concerning
disclosure, the issue must be resolved by the trier of fact. Id.

 Here, the trial court heard evidence that Barnes thought he was lending the $17,000
to Ekberg personally; Barnes was unaware of the corporate status of JKL. He was not in the business
of making loans. He did not expect to collect a fee or interest for the loan. He testified that he
agreed to make the loan because he was on friendly terms with Ekberg, he knew Ekberg was
experiencing financial troubles, and he had assisted Ekberg once before and had no problem
collecting repayment the last time. Barnes further testified that, although he was aware that Ekberg
needed the loan to make payroll, Barnes had not been informed that the loan was for JKL; he was
not concerned with the manner in which the loan proceeds were used so long as he got his money
back. We hold this evidence is sufficient to support the trial court's findings.

 Although Barnes had previously dealt with Ekberg in his capacity as president of JKL,
Ekberg had a duty to disclose his representative capacity at the formation of his loan agreement with
Barnes. See Posey, 997 S.W.2d at 832. Ekberg places significance on the fact that Barnes made the
check payable to JKL and that the check left for Barnes to repay the loan was drawn on JKL's
account, implying that this sufficiently evidences his disclosure of his representative capacity. (3) 
However, as Barnes testified, he made the check payable to JKL "out of habit. That's the way I
wrote all of his [Ekberg's] checks, even when I paid him to move my equipment." The fact that
Barnes made the check payable to JKL does not conclusively establish his knowledge of Ekberg's
representative capacity. Cf. Anderson v. Smith, 398 S.W.2d 635, 637 (Tex. Civ. App.--Dallas 1965,
no writ) (acknowledging that check signed with undisclosed principal's name may have been
received in such routine manner that it had little or no significance on question of knowledge). 
Similarly, a check signed with an undisclosed principal's name does not in itself put the contracting
party on notice of the agency. Posey, 997 S.W.2d at 832 (citing Anderson, 398 S.W.2d at 637). 
Accordingly, we hold that Ekberg did not establish his affirmative defense of agency as a matter of
law. Ekberg's second issue is overruled.

 By his first issue, Ekberg maintains that the trial court "was barred by rules of law
and evidence from giving weight to the only evidence offered by [Barnes] to prove the loan was
made to [Ekberg]." In support, he argues that Barnes's acceptance of JKL's check and attempt to
deposit it into his account "conclusively showed as a matter of law that [Barnes] knew and consented
to the loan transaction with JKL," and that the trial court was therefore "barred from accepting
Barnes's testimony to the contrary that he intended to make the loan to Ekberg, individually." 
Having concluded that Barnes's acceptance of a check drawn on JKL's account does not establish
as a matter of law that Ekberg disclosed his representative capacity to Barnes at the time they entered
into the loan agreement, we overrule Ekberg's first issue.


CONCLUSION

 Having overruled both issues presented, we affirm the trial court's judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: July 26, 2001

Do Not Publish

1. During the trial, Barnes testified that he lent the money to Ekberg because Ekberg needed the
funds to make payroll and Barnes agreed to help him out. Barnes had once before lent Ekberg
$7,000 so that he could make payroll. On that occasion, Ekberg promptly repaid Barnes, and so
Barnes felt secure in once again lending Ekberg money.
2. Barnes was listed as a creditor to which JKL owed $17,300 for "subcontract services." At trial,
Ekberg admitted that the description of the debt was inaccurate, that Barnes had not performed
subcontract services for Ekberg, and that the debt was actually for the loan Barnes made to Ekberg. 
He explained that the inaccurate description must have been a "typo."
3. The repayment check was not offered into evidence at trial; however, Ekberg testified that the
check had been drawn on JKL's account, and Barnes did not dispute this assertion.


 He testified that he
agreed to make the loan because he was on friendly terms with Ekberg, he knew Ekberg was
experiencing financial troubles, and he had assisted Ekberg once before and had no problem
collecting repayment the last time. Barnes further testified that, although he was aware that Ekberg
needed the loan to make payroll, Barnes had not been informed that the loan was for JKL; he was
not concerned with the manner in which the loan proceeds were used so long as he got his money
back. We hold this evidence is sufficient to support the trial court's findings.

 Although Barnes had previously dealt with Ekberg in his capacity as president of JKL,
Ekberg had a duty to disclose his representative capacity at the formation of his loan agreement with
Barnes. See Posey, 997 S.W.2d at 832. Ekberg places significance on the fact that Barnes made the
check payable to JKL and that the check left for Barnes to repay the loan was drawn on JKL's
account, implying that this sufficiently evidences his disclosure of his representative capacity. (3) 
However, as Barnes testified, he made the check payable to JKL "out of habit. That's the way I
wrote all of his [Ekberg's] checks, even when I paid him to move my equipment." The fact that
Barnes made the check payable to JKL does not conclusi