COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-261-CV

 

EID CORP. D/B/A COME-N-GO                                             APPELLANTS

AND
MOHD S. ALHAJEID

 

                                                   V.

 

FORT WORTH-TARRANT SUNBELT, INC.                                   APPELLEE

D/B/A DFW SUNBELT BUSINESS ADVISORS                                             

 

                                              ------------

 

         FROM
COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellants EID Corporation (AEID@) d/b/a
Come-N-Go and Mohd S. Alhajeid appeal the trial court=s judgment in favor of appellee Fort Worth-Tarrant Sunbelt, Inc. d/b/a
DFW Sunbelt Business Advisors (ASunbelt@) in its
suit to recover broker fees under a listing agreement.  In appellants= first point, they contend that the trial court erred by granting
judgment in favor of Sunbelt because there was no evidence or insufficient
evidence to establish that Alhajeid was liable in his individual capacity.  In their second point, appellants argue that
the trial court erred by granting judgment against EID because there was no
evidence or insufficient evidence to establish that EID was liable because the
parties entered into a cancellation agreement. 
We affirm.

II. Background Facts








On October 28, 2003, Alhajeid
entered into a written listing agreement with Sunbelt for the sale of
Come-N-Go, a convenience store (Abusiness@). According
to the terms of the listing agreement, Sunbelt agreed to refer potential buyers
to Alhajeid and Alhajeid agreed to pay Sunbelt a commission of twelve percent
on the purchase price, but not less than $10,000.  The listing covered the sale of the business
only.  The listing agreement stated that
if Alhajeid canceled or withdrew from the contract, he would still be liable
for the commission.  Sunbelt found two
potential buyers for the business, but Alhajeid told Sunbelt that he had
changed his mind and did not want to sell the business.  Instead, on January 9, 2004, Alhajeid entered
into a contract of sale with John Siyoung Lee, a buyer who was not referred by
Sunbelt.  The Lee contract was for
$200,000 for the property, and $236,000 for the business. On February 12, 2004,
Alhajeid signed a cancellation agreement with Sunbelt. Sunbelt filed suit
against Alhajeid and EID after they refused to pay the twelve percent
commission.  

On April 26, 2005, the trial
court entered judgment in favor of Sunbelt and against EID and Alhajeid,
jointly and severally, for $18,000, prejudgment and postjudgment interest,
attorney=s fees, and court costs.  Upon
appellants= request,
the trial court entered findings of facts and conclusions of law.

III.  Standards of Review

Findings of fact entered in a case tried to the court have
the same force and dignity as a jury's answers to jury questions.  Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991).  The trial
court's findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing evidence supporting a jury's answer. 
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). 
Unchallenged findings of fact are binding unless the contrary is
established as a matter of law or there is no evidence to support the
findings.  McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986); Reliance Ins. Co. v. Denton Cent. Appraisal
Dist., 999 S.W.2d 626, 629 (Tex. App.CFort Worth 1999,
no pet.).  








Conclusions of law may not be challenged for factual
sufficiency, but they may be reviewed to determine their correctness based upon
the facts.  Dominey v. Unknown Heirs
and Legal Representatives of Lokomski, 172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005,
no pet.); Rogers v. City of Fort Worth, 89 S.W.3d 265, 277 (Tex. App.CFort Worth 2002,
no pet.).

A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).








An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

IV.  Applicable Facts

At trial, Ise Lushaj
testified that in 2003 and 2004 he worked as a commercial business broker for
Sunbelt.  Lushaj met with Alhajeid
because Alhajeid was interested in selling Come-N-Go.  After their meeting, Lushaj left the listing
agreement with Alhajeid to look over. 
Lushaj stated that he went through every line of the listing agreement
with Alhajeid, and that Alhajeid never told him that he did not understand what
he was signing.  On October 28, 2003,
Alhajeid signed the Sunbelt listing agreement to sell Come-N-Go for $150,000,
which amount included a twelve percent commission to Sunbelt. Lushaj stated
that the handwritten items in the listing agreement were written entirely by
Alhajeid.[2]  Additionally, Lushaj stated that Alhajeid
presented himself as the sole owner of Come-N-Go.








Lushaj testified that after
Alhajeid listed the business with Sunbelt, he presented two full-price offers
of $150,000 to Alhajeid.  He said that
both buyers had the funds to purchase the business and that both offers had
been accompanied with a $5,000 deposit. 
Lushaj stated that he called Alhajeid on numerous occasions and told him
about the two offers, but that each time, Alhajeid told him that he was not in
town.  On February 11, 2004, Lushaj went
to Come-N-Go to show Alhajeid the two offers. 
However, Alhajeid told him, AI change my mind, I [am] not selling it.@  Lushaj testified that Alhajeid
never told him that the offers were unacceptable.  Lushaj stated that even though the offers
never turned into contracts, he still expected to get paid his commission. 








Lushaj testified that he
later learned that on January 9, 2004, Alhajeid had entered into a contract to
sell the business to Lee instead for $200,000. 
Alhajeid had never told Lushaj that he was working on a side deal to
sell Come-N-Go to Lee.  After learning
about the Lee contract, Lushaj=s boss prepared a written AListing Cancellation and Withdrawal from Sale Notification@ agreement for Alhajeid to sign. 
The cancellation agreement removed Come-N-Go from Sunbelt=s listings and cancelled the listing. 
But Lushaj testified that he specifically told Alhajeid that he still
owed the full commission price of $18,000, twelve percent of the $150,000
purchase price shown in the listing agreement and in the offers Lushaj
presented to Alhajeid under the listing agreement.  Alhajeid signed the cancellation agreement on
February 12, 2004.

Alhajeid testified that EID
owned the business, Come-N-Go, but that he personally owned the real estate
upon which Come-N-Go was located.  He
stated that when he entered into the listing agreement with Lushaj, he was only
selling the business, not the real estate. 
Alhajeid testified that he signed the listing agreement the same day
that he met with Lushaj, not a couple of days later as Lushaj had
testified.  In regard to the listing
agreement,  Alhajeid stated that he could
not read English very well and that he could only fill in the easy parts of the
agreement.  He said that he did not
understand the Ahard parts@ of the listing agreement. 








Alhajeid testified that on
January 13, 2004, he left for Jordan and that he returned on February 10,
2004.  He stated that he never received
any phone calls or talked to Lushaj while he was in Jordan.  Alhajeid stated that on February 11, 2004,
between 2:00 p.m. and 3:00 p.m., he received a phone call from Lushaj stating
that he had received two offers for the business.  Lushaj told Alhajeid that he was going to
show Come-N-Go to the prospective buyers. However, Alhajeid testified that when
Lushaj arrived at Come-N-Go, Lushaj walked in and handed him the cancellation
agreement and told him to sign it. 
Alhajeid stated that he did not read the cancellation agreement before
he signed it; however, he said that he does not typically read contracts before
signing them because he usually has people read them to him.  He further stated that he signed every
document as a corporate representative and not in his individual capacity.

Alhajeid testified that he
had placed an advertisement in the newspaper to sell Come-N-Go before he
entered into the listing agreement with Sunbelt. He stated that Lushaj knew
that he was advertising in the newspaper and that Lushaj actually saw the
advertisement.  Alhajeid stated that on
October 25, 2003, he was contacted by a potential buyer who had seen the
advertisement in the newspaper.  On
January 9, 2004, Alhajeid testified that he signed a real estate and commercial
business contract with the buyer, Lee, but that he did not call and tell Lushaj
before he left for vacation. 

Muslam Al Trie testified that
he was working at Come-N-Go on February 11, 2004 when Lushaj came into the
store.  He stated that Lushaj walked into
the store, handed Alhajeid the cancellation agreement, told  him to sign it, and said, AI don=t have time
to waste.@

V.  Analysis

A. Alhajeid=s Personal Liability








In his first
point, Alhajeid complains that the evidence is legally and factually
insufficient to establish that he was liable under the listing agreement in his
individual capacity.  Sunbelt argues that
there is sufficient evidence to show that Alhajeid is shown as the seller on
the face of the listing agreement and that the evidence also demonstrates that
Alhajeid signed it in his individual capacity because he never told Lushaj that
he intended to sign only as an agent or representative of EID.

An unambiguous contract must
be construed by the court as a matter of law and not left open to the
interpretation of its terms by a jury; 
however, it is proper to allow the trier of fact to interpret an
ambiguous contract.  Burlington N.
& Santa Fe Ry. Co. v. S. Plains Switching, Ltd., 174 S.W.3d 348, 356
(Tex. App.CFort Worth
2005, no pet.); see Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983).  The question of whether a
contract is ambiguous is one of law for the court.  Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996). A contract is not ambiguous if its words can
be given a definite or certain meaning as a matter of law.  Burlington N., 174 S.W.3d at 356; Coker,
650 S.W.2d at 393.  

The listing agreement shows
that Alhajeid is the seller of Come-N-Go and shows the firm name as ACome-N-Go d/b/a EID Corporation.@  The signature block was filled
out and signed as follows:

 

 








Come-N-Go

Company Name

/s/
Mohd Alhajeid

Seller

10-28B03

Date

 

We hold that the listing agreement unambiguously
shows that Alhajeid signed it in his individual capacity because it identifies
him as the seller of Come-N-Go and because he signed it as the seller of
Come-N-Go without any indication that he was signing in any other
capacity.  The only mention of EID is as
an assumed name of Come-N-Go.       

Additionally, for an agent to
avoid personal liability on a contract, he has the duty to disclose not only
that he is acting in a representative capacity, but also the identity of his
principal.  A to Z Rental Ctr. v.
Burris, 714 S.W.2d 433 435 (Tex. App.CAustin 1986, writ ref=d n.r.e.); Dodds v. Charles Jourdan Boutique, Inc., 648 S.W.2d
763, 766 (Tex. App.CCorpus
Christi 1983, no writ); Mahoney v. Pitman, 43 S.W.2d 143, 146 (Tex. Civ.
App.CAmarillo 1931, writ ref=d).  If the principal remains
undisclosed, or if it is known that a person is acting as an agent but the Aidentity@ of the
principal is not disclosed, the agent is considered to be a party to the
contract.  Lacquement v. Handy,
876 S.W.2d 932, 939 (Tex. App.CFort Worth 1994, no writ); see Burris, 714 S.W.2d at 435.   








An agent cannot claim immunity from personal liability merely because
the party with whom the agent dealt had a means of discovering the agent's
representative capacity.  Burris,
714 S.W.2d at 435.  The test of
disclosure is the other party's knowledge, or reasonable grounds to know, of
the principal=s
existence or identity, irrespective of the source from which the other party
obtains it.  Id.  The other party=s
actual knowledge of the principal, not just the other party's suspicion, is the
test.  Id.  If the evidence concerning disclosure is
conflicting, the issue of disclosure is a fact issue that must be decided by
the trier of fact.  Lacquement, 876
S.W.2d at 939; see Sw. Bell Media, Inc. v. Trepper, 784 S.W.2d 68, 72
(Tex. App.CDallas
1989, no writ).  

 

Here, Alhajeid signed the
Sunbelt listing agreement without mentioning that he was acting as a
representative of EID or that he intended to sign in his representative
capacity.  Further, Alhajeid signed the
cancellation agreement in his individual capacity, not as an agent for
EID.  Lushaj testified that Alhajeid
presented himself as being the sole owner of Come-N-Go at the time the listing
agreement was signed.  The firm=s name is shown as Come-N-Go with EID listed as Come-N-Go=s d/b/a.  After reviewing the
evidence, we hold that the evidence is legally and factually sufficient to show
that Alhajeid did not sign the listing agreement as merely an agent of EID, but
instead signed it in his individual capacity. 
Thus, we overrule appellants= first point.








B.  EID=s Liability

In appellants= second point, they complain that the trial court erred by granting judgment
in favor of Sunbelt because there was no evidence or insufficient evidence to
establish that EID was liable on the listing agreement because it had been
terminated by the cancellation agreement.[3]  Appellants contend that Sunbelt relieved EID
of its obligations under the listing agreement by executing and signing the
cancellation agreement.

The cancellation agreement
was between Sunbelt and Alhajeid as AOwner of EID Corp. dba >Come-N-Go,=@ and was signed as such.  The
pertinent part of the cancellation agreement provides,

I agree that [Sunbelt] has fulfilled [its]
primary brokerage function concerning the sale of my business, ACome-N-Go[.]@ DFW
Sunbelt Business Advisors and its agent, Ise Lushaj, have brought and I have in
my possession two separate offers for $150,000 that fulfill the requirements of
the Listing Agreement, dated 10/23/03. 
However, I still am canceling the listing agreement contract and
withdrawing my business from sale.

 








The pertinent parts of the
listing agreement provide,

1.  The
Seller hereby engages [Sunbelt], on a sole and exclusive basis, to sell
the assets of the above described business, including all fixtures, equipment,
goodwill, trademarks, trade names, and inventory associated therewith.

  

2. Seller
agrees to pay [Sunbelt] 12% of the purchase price, but in any event not less
than $10,000.

3.  Seller agrees that if this listing is
cancelled or the property withdrawn from sale during the listing term by
Seller, the commission shall become immediately due by Seller to
[Sunbelt].  If Seller refuses or is
unable to comply with the listing term upon the terms set forth above, the
commission shall become immediately due by the Seller to [Sunbelt].[4]
[Emphasis added.]








Appellants argue that because
Sunbelt drew up the cancellation agreement, Sunbelt intended to relieve EID
from its obligations under the listing agreement.  However, the cancellation agreement does not
state that Sunbelt waived its right to a commission under the listing
agreement, nor does it purport to contradict or delete the parts of the listing
agreement entitling it to a commission even if the listing agreement is
cancelled.  We perceive no ambiguity in
the language of the cancellation agreement. 
See Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243
S.W.2d 154, 157 (1951) (holding that unambiguous contract will be enforced as
written and parol evidence will not be received to create ambiguity or give a
meaning different from that which the language imports); see also Doncaster
v. Hernaiz, 161 S.W.3d 594, 603 (Tex. App.CSan Antonio 2005, no pet.).  It
unambiguously states that the listing agreement is cancelled and that Sunbelt
fully performed its obligations under the listing agreement; it does not
relieve the seller of any obligation to pay a commission under paragraph three
of the listing agreement.[5]  Thus, appellants materially breached the
listing agreement by refusing to pay Sunbelt the commission after admitting
that it had fully performed under the listing agreement.

After reviewing the evidence,
we hold that the evidence is legally and factually sufficient to establish that
the cancellation agreement did not relieve EID of its obligation to pay Sunbelt
the commission price for the sale of Come-n-Go under the January 9 listing
agreement.  Therefore, we overrule
appellants= second
point.

 








VI.  Conclusion

Having overruled appellants= two points, we affirm the trial court=s judgment.

 

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 

DELIVERED:
June 8, 2006











[1]See Tex. R. App. P. 47.4.





[2]All
of the blanks in the listing agreement form were completed by Alhajeid in his
handwriting, including the seller=s information, business type,
and broker=s
fee.





[3]Appellants
limit their argument that EID was not liable on the listing agreement to the
cancellation agreement issue; they never contend that EID was not liable on the
listing agreement for any other reasonCfor example, because it is
not shown anywhere on the agreement as a party. 
Therefore, we will assume for purposes of this discussion that EID was
originally liable on the listing agreement along with Alhajeid.  See Pat Baker Co. v. Wilson, 971
S.W.2d 447, 450 (Tex. 1998) (holding appellate court cannot reverse a case on a
ground not presented in the briefs).  

 





[4]This
portion is reiterated in an amendment to the listing agreement.





[5]In
its finding of fact number ten, the trial court found that A[t]he
Cancellation further states that [appellants]. . . will not be paying [Sunbelt]
the 12% brokerage fee due on the $150,000 offers.@  This finding is not supported by the plain
language of the cancellation agreement, nor any other evidence in the
record.  See EPGT Tex. Pipeline, L.P.
v. Harris County Flood Control Dist., 176 S.W.3d 330, 340 (Tex. App.CHouston
[1st Dist.] 2004, no pet.) (holding unambiguous contracts are to be construed
as a matter of law); Lesikar v. Rappeport, 33 S.W.3d 282, 311 (Tex. App.CTexarkana
2000, pet. denied)  (stating appellate
courts can Aunfind@
facts).