COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FIVE STAR INTERNATIONAL HOLDINGS INCORPORATED AND F-STAR SOCORRO, L.P., | § § § | No. 08-07-00143-CV Appeal from the |
| Appellants, | § | 41st Judicial District Court |
| v. | § | of El Paso County, Texas |
| THOMSON, INCORPORATED, | § § | (TC# 2001-3644) |
| Appellee. | § | |

## O P I N I O N

Five Star International Holdings, Inc. ("Five Star") and F-Star Socorro, L.P. ("F-Star")

appeal from a judgment awarding over $1.6 million to Thomson Incorporated ("Thomson") for

breach of a commercial lease agreement. Five Star raises sixteen issues on appeal challenging

the legal and factual sufficiency of the evidence, the admissibility of expert testimony, the jury

charge, and the attorney's fees award.

On December 11, 1997, Five Star and Thomson entered into a twelve-year lease

agreement where Thomson agreed to lease sixty-seven acres containing 950,000 square feet of

commercial and industrial space from Five Star. The leased property was located within a larger

tract of land owned by Five Star, consisting of the commercial facility and agricultural land. As

part of the agreement, Five Star committed to build the facility to meet Thomson's warehousing

and distribution needs.

The lease required rental payments in two categories: "base rent" and "additional rent."

"Base rent" was the monthly rental amount for the facility. Thomson paid $113,333.33 for the

first month's base rent at the time the parties executed the lease. In months 2-120 Thomson was obligated to pay $269,166.67, with a rental increase in month 121 to $336,458.34 for the balance of the lease term. "Additional rent" included the cost of: (1) operating and maintaining the "common area;" (2) real estate taxes; and (3) insurance premiums as required by the lease. These additional charges were to be determined and paid as follows:

> Landlord shall furnish Tenant a written statement estimating: (i) Common Area expenses; (ii) the total taxes dues for said calendar year; and (iii) total insurance premiums due for the year (herein collectively the 'Estimate'). Beginning with the first month following receipt of such statement, Tenant shall pay Landlord monthly, as additional rent one-twelfth (1/12) of the Estimate. In addition, Tenant shall pay with the rental payment for the first month following receipt of the Estimate an amount equal to the difference between prior year and the current year for the number of months elapsed in the calendar year prior to receipt of the Estimate, so as to bring said monthly payments current for the year. As soon as practical after the end of each calendar year, but not more than one hundred twenty (120) days after the applicable year end, Landlord shall furnish Tenant a written statement showing the total Common Area expenses, taxes and insurance premiums actually due for the calendar year ended (the 'Actual Expenses'). If the Actual Expenses exceed the Estimate, then Tenant agrees to pay within ten (10) days of receipt of said statement, the difference between the Actual Expenses and the Estimate. If the Estimate exceeds the Actual Expenses, then Landlord agrees to refund the difference at the time that such statement is furnished, provided Tenant is not then in default in the performance of any of its obligations under this Lease. The Landlord shall make the Estimate only once per year. All Actual Expenses are limited to expense items actual and necessary for the operations and maintenance of the Facility and Premises. All services provided by Landlord are limited to competitive costs. . . . The first payment of such additional rent shall be due on the Rent Commencement date.

> Tenant may review Landlord's records annually with respect to such charges at Landlord's office upon thirty (30) days prior notice to Landlord.

Thomson took possession of the premises on June 15, 1998. Prior to Thomson moving into the facility, Five Star transferred its interest in the leased premises as the landlord to F-Star. F-Star, in turn, hired F-Star Property Management to manage the property. From June 15, 1998,

forward, Thomson dealt exclusively with F-Star Property Management and F-Star regarding the lease. Five Star, F-Star, and F-Star Property Management are owned and controlled to varying degrees, by Mr. Gerald Ayoub of El Paso. Between 1998 and 2005, Thomson paid approximately 24 million dollars for rent, approximately 2.3 million dollars for common area expenses, over 3 million dollars in taxes, and approximately $226,000 for insurance.

On September 27, 2001, Thomson filed suit against Five Star alleging Thomson had been overcharged for common area expenses. In its third amended petition, Thomson also alleged that both Five Star and F-Star had breached the lease agreement by consistently overcharging Thomson for property taxes and common area expenses and by refusing to refund the overpayments. Thomson claimed that it was overcharged for property taxes because F-Star did not pass on the benefit of tax abatements and exemptions which the landlord received from local taxing authorities. At trial, Thomson also claimed that F-Star failed to segregate the property taxes due on the leased property from the taxes due on the larger tract, and was therefore billing Thomson for taxes owed on property beyond the acreage covered by the lease.

On January 30, 2006, the trial court granted partial summary judgment in Thomson's favor. The court determined that as a matter of law the lease required Five Star and F-Star to pass on the benefit of any tax abatements and exemptions to Thomson in its calculation of the taxes owed on the leased property. The case was tried to a jury in December of 2006. The jury returned a verdict in Thomson's favor, finding that Thomson had not waived its right to recover the overpayment, that Thomson had been overcharged for real estate taxes in the years 1998-2005 in the amount of $979,029, and that Thomson had been overcharged for common area expenses. The trial court entered its final judgment on March 16, 2007. Thomson was awarded

$1,652,963 for breach of contract, plus attorneys fees and costs.

Five Star has combined its sixteen issues into five groups. The first group consists of Issues One, Two, and Three, all of which challenge the jury's finding that Thomson did not waive its right to recover. The waiver issue was presented to the jury in Question One of the charge. Neither party has challenged the form or contents of the question on appeal. The question appeared in the charge as follows:

> Do you find from the preponderance of the evidence that [Thomson] waived the right to demand that the excess taxes and the excess common area expenses, if any, be paid back to it
>
> a.      By signing or not returning Estoppel Certificates . . .; or
>
> b.      By paying invoices for taxes and for common area expenses as they were submitted; or
>
> c.      By not objecting at the time of the audit (Exhibit D1)?

"Waiver" was defined for the jury as "the intentional surrender of a known right or intentional conduct inconsistent with claiming that right." The jury answered "no."

In Issue One, Five Star argues that Thomson waived its right to recover because Thomson failed to timely respond to the landlord's requests for estoppel certificates as required under the lease. As Five Star has not challenged the submission of the issue to the jury, we construe this argument as a challenge to the legal sufficiency of the evidence supporting the jury's adverse finding in part "a" of Question One. In Issues Two and Three, Five Star challenges the factual sufficiency of the jury's determination that Thomson did not waive its right to recover overpayments.

Waiver is an affirmative defense for which Five Star bore the burden of proof at trial. *See*

TEX.R.CIV.P. 94; *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 481 (Tex. 2001). A "matter of law" challenge to an adverse finding on which the complaining party had the burden of proof is a challenge to the legal sufficiency of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). To succeed on such a point, the party must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Id*. In reviewing a "matter of law" challenge, we must first examine the record for evidence supporting the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. We may only sustain the issue if the contrary position is conclusively established. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 241. We must consider and weigh all the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance that it is clearly wrong and unjust. *Id*.

In Issues One and Two, Five Star relies on Paragraph Seventeen of the lease agreement in support of its conclusion that Thomson's failure to provide the estoppel certificates precludes Thomson from recovering the excess tax and common area charges. Paragraph Seventeen required Thomson to provide F-Star with a written statement certifying that the lease was in full force and effect, and stating any uncured defaults of which Thomson was aware within ten days of F-Star's request. The certificates could be relied upon by any prospective purchaser or

encumbrancer as accurate statements of the status of the lease. The provision concludes by stating that Thomson's failure to comply with F-Star's request within ten days was conclusive that: (1) the lease was in full force and effect; (2) there were no uncured defaults in the F-Star's performance; (3) not more than one month's rent and charges had been paid in advance; and (4) the lease had not been modified. F-Star made two estoppel certificate requests which were not timely answered by Thomson; one in 2003, and another in 2005.

While Paragraph Seventeen and the related certificate requests may serve as evidence contradicting the jury's finding, we may not consider such evidence in a "matter of law" legal sufficiency review unless we first determine there is no evidence in the record to support the finding. *See Dow Chem. Co.*, 46 S.W.3d at 241. The record also demonstrates that at the time F-Star sent the two unanswered estoppel certificate requests, the parties were already engaged in litigation. As early as 1999, Thomson expressed concerns to F-Star over increases in common area expenses. In the summer of 2000, Thomson sent its own audit team to F-Star's offices to investigate a $110,285 increase in common area expenses. Following its audit, Thomson requested additional documentation to support the common area expense increase. By the time F-Star sent the 2003 estoppel certificate, Thomson's lawsuit had been on file for two years.

The evidence of Thomson's actions in pursuit of its claims supports the jury's determination that the company did not intend to surrender its right to recovery. As this constitutes some evidence in support of the verdict, we may not consider evidence to the contrary in our review. *See Dow Chem. Co.*, 46 S.W.3d at 241. Therefore, the evidence is legally sufficient to support the jury's verdict regarding the estoppel certificates. Based on the same supporting evidence, we conclude the jury's finding was not so against the great weight and

preponderance that is clearly wrong and unjust. Issues One and Two are overruled.

Five Star's factual sufficiency argument in Issue Three fails for much the same reason. In part "b" of Question One, the jury was asked to determine whether Thomson's failure to lodge a complaint immediately following its audit of F-Star's expense and tax records constituted a waiver of its right to recover. Five Star argues that the jury's "no" answer on this issue is against the great weight and preponderance of the evidence. As we have already discussed, Thomson conducted an audit of F-Star's common area expense records in 2000. In his audit report, Thomson's auditor claimed F-Star had omitted documents which were required to complete the review. The parties continued to argue about the "omitted" documents over the next several months. In March 2001, F-Star produced its 1999 common area charge spreadsheet for Thomson's review. In the interim, the parties continued to dispute the amount owed under the lease. Thomson filed suit less than a year later. Based on this evidence, we conclude that the jury's adverse finding on part "b" of Question One was not so against the great weight and preponderance of the evidence. Issue Three is overruled.

Issues Four through Seven challenge the jury's award for common area expense overpayment. In Issues Four, Five, and Six, Five Star contends there is no competent evidence on which the jury could have based the award. Five Star argues that Thomson's expert witness testimony was not admissible to establish standard market rates for the expenses, and therefore concludes that the jury's verdict is without evidentiary support.[1] In Issue Seven, Five Star argues

---

[1] Questions Three and Four in the jury charge addressed F-Star's alleged overcharges for common area expenses. Question Three asked whether, based on a preponderance of the evidence, the jury found that Thomson paid to F-Star more than the lease provided for regarding common area expenses. The jury answered "yes" to Question Three. Question Four then asked the jury to determine what the excess payments were for each year from 1998 to 2005. The jury

the question which addressed common area expenses in the jury charge was improperly submitted.

An appellate court will sustain a "no evidence" legal sufficiency challenge if the record shows: (1) the complete absence of a vital fact; (2) the fact finder was barred by rules of law or evidence from giving weight to the only evidence offered to prove an essential fact; (3) the evidence to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of an essential fact. *Carrasco v. Stewart*, 224 S.W.3d 363, 367 (Tex.App.--El Paso 2006, no pet.). We will view the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id*. However, if the evidence allows only one inference, the trier of fact may not be permitted to disregard that inference. *Id*. When a no evidence point rests on the competency of the evidence, we may not disregard contrary evidence showing it to be incompetent. *Id*.

Thomson offered the expert testimony of Mr. Jerome Steuart as its primary evidence of F-Star's overcharging for common area expenses. Five Star contends the trial court abused its discretion in admitting Mr. Steuart's testimony because Thomson did not demonstrate his opinions were reliable. A trial court's decision to admit expert testimony is reviewed for an abuse of discretion. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). The trial court abuses its discretion when it rules without regard to guiding rules and principles of law. *See Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

---

answered Question Four as follows: 1998- $0; 1999- $91,303; 2000- $225,578; 2001- $101,033; 2002- $85,340; 2003- $85,340; 2004- $85,340; and 2005- $0.

The testimony of a qualified expert is generally admissible when scientific, technical, or other specialized knowledge will assist the fact finder in understanding the evidence, or to determine a fact issue. TEX.R.EVID. 702. The trial court has the gatekeeper function of ensuring that expert testimony is base on a reliable foundation, and is relevant to the issues in the case. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998).

When an expert is offered to testify based on his or her experience and training, rather than a specific scientific methodology, the trial court must determine whether there is, "too great an analytical gap between the data and the opinion proffered" for the opinion to be reliable. *See Gammill*, 972 S.W.2d at 726; *Taylor v. American Fabritech, Inc.*, 132 S.W.3d 613, 619 (Tex.App.--Houston [14th Dist.] 2004, pet. denied). When measuring the reliability of an expert's opinion in non-scientific fields, such as we have here, courts should consider whether: (1) the field of expertise is a legitimate one; (2) the subject matter of the expert's testimony is within the scope of that field; and (3) the expert's testimony properly relies upon the principles involved in that field. *See Taylor v. Texas Dept. of Protective and Regulatory Services*, 160 S.W.3d 641, 650 (Tex.App.--Austin 2005, pet. denied).

At the time of his testimony, Mr. Steuart was employed as the director for property management for Primera Partners, a full-service real estate company in San Antonio. He is in charge of all the property management activities for Primera Partners, and oversees budgeting, fiscal management, and all aspects of property management. Primera Properties manages office, industrial, and retail properties. Mr. Steuart testified that he has been in the property management business since 1985, and with Primera specifically since 2001. He is a certified property manager through the Institute of Real Estate Management and maintains a Texas Real

Estate License. Mr. Steuart explained that he has experience handling common area expenses for industrial properties occupied by a single tenant. In preparation for his testimony, Mr. Steuart reviewed the lease agreement between Five Star and Thomson, deposition testimony by the designated representative of the property management company hired by F-Star, expense spreadsheets provided by the property manager, and interviewed several colleagues in the El Paso area to familiarize himself further with the local market.

Five Star argues that because of Mr. Steuart's lack of experience in the El Paso real estate market, and his failure to describe "any foundation or standards for measuring or testing [his] methodology or opinions," the trial court had no basis on which it could have determined the opinions were reliable. We find otherwise. There is no dispute that property management as a field or profession, is a legitimate one. There is no dispute that the issue of common area expenses – how they are calculated and charged – falls within the bounds of the property management business. Finally, there is no indication from the record, and Five Star does not argue to the contrary, that Mr. Steuart's opinions depend on principles not generally applicable to entities involved in property management.

All of Five Star's concerns were properly tested by its cross-examination of Mr. Steuart. They were not of the type which would have rendered the opinions unreliable and therefore inadmissible. *See SAS & Assoc., Inc. v. Home Marketing Servicing, Inc.*, 168 S.W.3d 296, 300 (Tex.App.--Dallas 2005, pet. denied). The trial court did not abuse its discretion in admitting Mr. Steuart's testimony. Because those opinions provided the jury with a reasonable basis for its award for common area expense overcharges, Five Star's no evidence point must fail. Issues Four though Six are overruled. Five Star's argument in Issue Seven, that the question of

common area expenses was improperly submitted to the jury, is based entirely on the success of its argument that Mr. Steuart's testimony was inadmissible. Given the disposition of Issues Four, Five, and Six, we also overrule Issue Seven.

Issues Eight and Nine deal with Five Star's contention that Thomson is not entitled to recover for the alleged overpayment of real property taxes. In Question Two of the court's charge, the trial court instructed the jury "that [Thomson] paid more in taxes to [F- Star] than [F-Star] paid in taxes on the property subject to the lease." This instruction mirrors the court's summary judgment ruling that the lease required Five Star and F-Star to pass the benefit of any tax abatements and exemptions on to Thomson.

Question Two then asked: "[b]ased on a preponderance of the evidence, what amount did [Thomson] pay in taxes to [F-Star] in excess of what [F-Star] paid in taxes on the property subject to the lease for the following years . . . ." All that was left for the jury to determine, was what amount Thomson overpaid each year. The jury answered as follows:

| 1998 | $72,800 |
| 1999 | $141,070 |
| 2000 | $146,104 |
| 2001 | $204,200 |
| 2002 | $152,855 |
| 2003 | $187,147 |
| 2004 | $64,657 |
| 2005 | $10,196 |

In Issue Nine, Five Star contends that Question Two was not properly submitted to the jury, and caused the rendition of an improper judgment. The goal of the jury charge is to submit to the jury all the issues for decision simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). To that end, the

-11-

trial court is accorded broad discretion in constructing the jury charge, so long as the charge is legally correct. *Id.* A court abuses its discretion when it rules without regard to guiding rules and principles of law. *See Malone*, 972 S.W.2d at 43.

Five Star argues that by phrasing Question Two as it did, the trial court "created its own measure of taxes supposedly owed by Thomson -- the same amount F-Star paid in taxes." Five Star continues by arguing that such a definition is contrary to the terms of the lease. Paragraph Eleven in the lease provided in part: "Tenant, as additional rent, agrees to pay all taxes (both general and special), assessments, or governmental charges (hereinafter 'taxes') lawfully levied or assessed against the Facility." Five Star concludes that this language does not specify that Thomson would be responsible for the Facility's taxes regardless of what was actually paid by F-Star, and that by defining the amount of taxes owed as it did, the trial court re-wrote this portion of the lease.

The parties litigated the meaning of Paragraph Eleven at summary judgment. The trial court determined the lease obligated Thomson to pay real estate taxes in the amount equal to that actually assessed by the various taxing authorities. The court specifically concluded that the lease obligated F-Star to pass on any tax savings, in the form of abatements or exemptions, to Thomson. Based on the court's ruling, it is reasonable to conclude that Thomson contracted to repay whatever amount F-Star actually paid in property taxes. It is important to note that Five Star has not challenged the instruction accompanying Question Two, in which the court instructed the jury that Thomson had been overcharged for taxes. Because the only issue remaining for the jury was to determine what amount Thomson paid in excess taxes, and given the court's summary judgment ruling, the court did not abuse its discretion by posing the

-12-

question as it did.  Accordingly we overrule Issue Nine.

In Issue Eight, Five Star argues the evidence is legally and factually insufficient to support the jury's answer to Question Two.  However, Five Star does not include any citations to legal authority, or argument in support of this issue.  This failure results in a waiver of the issue. *See* TEX.R.APP.P. 38.1(i); *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 646 (Tex.App.--Houston [1st Dist.] 2002, no pet.).  Issue Eight is overruled.

Five Star's fifth group includes Issues Fourteen, Fifteen, and Sixteen.  In these, Five Star contends that Thomson is not entitled to the attorney's fee awarded in the judgment.  In Issue Fourteen, Five Star argues the trial court erred by allowing Thomson's attorney to present expert testimony on the reasonableness of the fee amounts because Thomson did not timely respond to its request for disclosure of the basis of the opinions.  Based in its conclusion that the attorney testimony was inadmissible, in Issue Fifteen Five Star contends there is no competent, admissible evidence to support the amount of the award.  In Issue Sixteen, Five Star argues the trial court did not submit the issue of attorney's fees to the jury properly.

On the eve of trial, Five Star moved to preclude Thomson's attorney from testifying as an expert on attorney's fees.  Five Star argued that Thomson had not timely responded to its various discovery requests for all the documents, reports, and other information on which the attorney would rely in his testimony.  According to the motion, Five Star received the final, unedited, copies of Thomson's attorney's bills only days before trial began.  Five Star concluded that under Texas Rule of Civil Procedure 193.6, the late-produced materials were not admissible.

Even if we were to accept Five Star's argument that the documents were not admissible, it does not necessarily follow that the attorney's testimony was also inadmissible.  There is no

requirement under Texas law that the billing records be admitted into evidence for a party to recover attorney's fees. *See Air Routing Intern. Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex.App.--Houston [14th Dist.] 2004, no pet.). Thomson's trial attorney gave detailed testimony on the time and costs which were spent pursuing these claims. He concluded that the fees charged to his client were reasonable, and calculated the total representation, from April 2003 through trial was $315,000. This testimony contains sufficient evidence to support the award. *See Schlager v. Clements*, 939 S.W.2d 183, 193 (Tex.App.--Houston [14th Dist.] 1996, writ denied). Five Star has not raised an issue challenging the admissibility of the attorney's testimony, and does not argue that the testimony alone was insufficient to support the award. Issues Fourteen and Fifteen are overruled.

In Issue Sixteen, Five Star argues the trial court erred in awarding attorney's fees as it did because Thomson failed to properly segregate the fees and costs related to this suit from fees incurred investigating other lawsuits related to the facility. A party seeking attorney's fees must show that the fees were incurred on a claim that allows recovery of such fees, and thus is generally required to segregate fees incurred on claims allowing recovery of fees from those that do not. *Stewart Title Guaranty Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997). When discrete legal services advance both recoverable, and unrecoverable claims, attorneys are not required to segregate to recover the total amount covering all claims. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006). In making this determination, we do not look at the legal work as a whole, but parse the work into component tasks to determine which tasks relate to recoverable claims. *See Chapa*, 212 S.W.3d at 313. The issue of whether segregation is necessary is a question of law, while the extent to which claims can be segregated is a mixed

question of law and fact. *Id*. at 312-13.

Thomson's lead trial attorney, Mr. Mark Osborn, testified as to the attorney's fees and expenses incurred in this suit. During cross-examination, Mr. Osborn agreed that Thomson's legal expenses in this case included the costs incurred by his firm for investigating and monitoring four other lawsuits, to which Thomson was not a party, but which involved Five Star and the facility. Mr. Osborn's testimony indicates that members of his firm attended other trials, spoke with representatives of the other entities involved, and observed common witnesses who were also scheduled to testify in this case, as part of their investigative work and preparation for Thomson's claims in this case.

Five Star summarily argues that any actions taken by Thomson's lawyers which refer to other lawsuits cannot be considered in the attorney's fee award in this case. We disagree. There is no indication from the record that the expenses at issue were performed in pursuit of claims or defenses outside those at issue here. Five Star did not present any evidence to contradict Mr. Osborn's testimony. The fact that the investigation of their client's claims in this case lead Thomson's lawyers to investigate and monitor other lawsuits related to the facility, does not render the expenses incurred for those services unrecoverable. The only evidence presented on this issue supports Thomson's position that the services were performed in pursuit of Thomson's claims in this case. There was no basis for segregation. *See Chapa*, 212 S.W.3d at 313-14. Issue Sixteen is overruled.

Finally, Issues Ten through Thirteen must be overruled because they have not been preserved for review. In these points, Five Star presents a single broad argument dealing with the trial court's decision to grant a declaratory judgment in Thomson's favor regarding tax abatement

agreements entered into by F-Star. There is no indication that these arguments were presented to the trial court, and therefore they have not been preserved for our review. *See* TEX.R.APP.P. 33.1(a). To the extent such an argument may have been preserved during summary judgment, these issues have not been adequately briefed and are therefore waived. *See* TEX.R.APP.P. 38.1(i); *Wheeler*, 95 S.W.3d at 646. Issues Ten through Thirteen are overruled.

Having overruled all of Appellants' issues, we affirm the trial court's judgment.


March 31, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.