

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00190-CV

PHIL FERRANT                                                          APPELLANT

V.

GRAHAM ASSOCIATES, INC.                                              APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

## I. Introduction

After considering Appellant Phil Ferrant's combined motion for rehearing and for reconsideration en banc, we deny the motion for rehearing but withdraw our original opinion of September 26, 2013, and substitute this opinion in its place. We dismiss the motion for rehearing en banc as moot.

---

[1]*See* Tex. R. App. P. 47.4.

Appellant Phil Ferrant appealed the judgment following a bench trial in the suit initiated against him by Appellee Graham Associates, Inc. (GAI). Challenging the legal and factual sufficiency of the evidence, Ferrant contends in his first two issues that he is not personally liable to GAI, that GAI waived its right to recover part of its claim, and that a promissory note he signed is not supported by consideration. Ferrant argues in his third issue that the evidence is legally insufficient to support the award of attorney's fees to GAI. We affirm.

## II. Background

GAI filed this suit against Ferrant in March 2011, alleging that Ferrant engaged GAI to perform engineering services but breached the contract and owed GAI $12,765.54. GAI also sought recovery of attorney's fees. Ferrant answered through a verified denial, specifically denying personal liability and alleging that an entity named West Fort Worth Day Care, LLC was instead GAI's client. Although all of the $12,765.54 originated with engineering services provided by GAI, Ferrant signed a promissory note for the outstanding balance due as of October 2009 and made several payments toward the note. GAI alleged that Ferrant still owed $4,423.86 on the promissory note and an additional $8,341.68 for services performed after Ferrant executed the promissory note. Thus, GAI alleged that Ferrant owed $12,765.54.

### A. Jeffery Winkler

Winkler, a registered professional engineer and former GAI employee, testified at trial that he was a senior project manager for this project. Winkler first

2

met Ferrant in 2008 at a meeting with Glenn Griggs, the architect for the project, and Winkler sent Ferrant a contract proposal after the meeting. The contract proposal was on GAI letterhead and was addressed to Ferrant "via Griggs Group, Inc." with the following subject line:

Proposal for Civil Engineering Services

> West Fort Worth Child Care Site – 1.5 Acres
> Fort Worth, Texas
> Project No. GG02

The proposal had a preprinted signature block at the end with blanks for a signature, the date, and the title of the person signing. Ferrant signed the proposal on September 19, 2008. He wrote "CFO" as his title but did not include the name of any company. Winkler confirmed that the footer on the signature page stated: "West Fort Worth Child Care–Griggs Group–GG02–Graham-jmw.doc."

Winkler testified that Ferrant did not say at the time he signed the contract that he was acting on behalf of Fort Worth Day Care Center, Compass Day Care Center, Ferrant's wife or daughter, or any other particular company. Winkler also testified that, from the beginning of the project in 2008 through the end of the project in 2010, he never had a conversation with Ferrant's wife or daughter or anyone who identified themselves as an owner of Fort Worth Day Care Center. Winkler's only conversations were with Ferrant, and Winkler called or e-mailed Ferrant with any questions that required the owner's input. Winkler testified that, although it was apparent to him that Ferrant did not have much experience in

3

construction or development, Ferrant was the general contractor for the project. Winkler testified that Ferrant "called the shots" for the project.

Winkler testified that there was a time when GAI suspended work for nonpayment as permitted by the contract and that Ferrant met with Winkler and Jimmy Wagnon, owner of GAI, at GAI's offices to discuss the unpaid invoices. GAI informed Ferrant that it would not continue work on the project if Ferrant did not agree to sign a promissory note. Ferrant signed the note on October 20, 2009, and GAI did additional work on the project.

Winkler identified a document titled "Unconditional Waiver & Release" that Wagnon signed on behalf of GAI in December 2009. The waiver and release stated that it "covers a progress payment for labor, services, equipment or materials furnished through November 30, 2009 only and does not cover retention or items furnished after that date." Winkler agreed that the waiver and release listed the job as "West Fort Worth Day Care" and did not mention Ferrant individually.

Winkler testified that GAI sued Ferrant to recover $8,341 for services GAI performed for Ferrant in 2010 and for $4,423, the remaining unpaid balance on the promissory note Ferrant executed in October 2009.

## B. Phillip Ferrant

Ferrant testified that he did not have any contract or development experience before taking on this project but that he did have experience with

4

business affairs from "several businesses." Ferrant has a master's degree in taxation from the University of Texas at Arlington and is a CPA.

Ferrant acknowledged that he signed the contract with GAI and that he had ample opportunity to review it before he signed it. He admitted that the contract does not mention "West Fort Worth Day Care, LLC" anywhere within it and testified that only the words "West Fort Worth" appear. Ferrant also acknowledged that "CFO" alone does not identify the entity for which he was acting when he signed the contract. He testified, though, that he signed the contract and interacted with GAI only as CFO of West Fort Worth Day Care, LLC and that he had no intention of being personally liable to GAI. He added that his wife and daughter are the owners of the daycare, that his daughter wanted to open a daycare, that he helped her open a daycare, and that he is not a member of the LLC. Ferrant testified that A&M Construction was the general contractor for the project.

Ferrant identified six checks he had signed and given to GAI as payments. The payor on the first three checks is "Monarch Fund I," which Ferrant testified is an assumed name under which he does business. Ferrant wrote his name next to "Monarch Fund I" on the second check. The payor for the other three checks is "Compass Children's Academy." Ferrant testified that Compass Children's Academy is the assumed name for West Fort Worth Day Care.

Ferrant testified that he intended to make all twelve payments of $631.99 as called for in the promissory note at the time he signed it and that he made the

5

payments on the promissory note for the first five months. He denied believing, though, that GAI would not do any additional work if he did not sign the promissory note and testified that he expected GAI to finish its contract obligations and to keep working. Ferrant admitted that he signed the promissory note in his individual capacity, but he denied receiving any personal benefit from having done so.

## C. Jimmy Wagnon

Wagnon is the chief executive officer and owner of GAI. He testified that he considered Ferrant to be the client for this project and that the name of the project was "West Fort Worth Day Care Center." He never visited with Ferrant's wife or daughter and testified that Ferrant never identified himself as Fort Worth Day Care or West Fort Worth Day Care and that "it's not in his e-mail address either."

Referring to the promissory note Ferrant signed on October 20, 2009, Wagnon testified that he did not tell Ferrant at the time that there would be no more billing by GAI on the project. Instead, Wagnon testified that he knew Ferrant needed to resolve issues with his SBA loan and that he had agreed to allow Ferrant to sign the promissory note in exchange for GAI giving Ferrant the waiver and release. Wagnon testified that he signed the waiver "a little while later."

On cross-examination, Wagnon testified that he had "no idea" who the general contractor was for this project. Wagnon acknowledged that Ferrant

wrote "CFO" on the contract when he signed it, but he testified that Ferrant "never did anything to state he was anything different than Phil Ferrant." Wagnon added that Ferrant could have been CFO of Monarch since the first check GAI received was from Monarch. Wagnon admitted that he did not question Ferrant about what CFO meant.

Wagnon testified that the $31,631.99 reflected on the waiver and release as having been paid includes both prior payments and the balance due on the promissory note. Wagnon agreed that GAI received five checks totaling $3,159.95 from Compass Learning Center after the date of the waiver and release, but he denied knowing that Compass Learning Center was an assumed name for West Fort Worth Day Care, LLC. Wagnon also testified that the five checks totaling $3,159.95 were payments on the promissory note. Each check was for $631.99, the monthly amount required by the promissory note. Wagnon added that Ferrant "got something from the promissory note" in that he had no money to pay GAI and would have been shut down had GAI not allowed Ferrant to give the promissory note as payment.

## D. GAI's Counsel

GAI's trial counsel testified about the attorney's fees incurred by GAI in the case. After describing his qualifications and experience, counsel testified that he had primarily been the attorney handling the legal services for GAI in the case and that he spent over sixty hours on this case at $300 per hour for a total of $18,000, which he opined was reasonable and necessary. He described some

7

of the work involved in the case: preparing the original petition; drafting a default judgment and certificate of last known address before learning that Ferrant, who was pro se at the time, had filed an answer without serving a copy on GAI; preparing a request for disclosure that Ferrant did not initially answer; having to notice Ferrant's deposition three different times; taking Ferrant's deposition; responding to a comprehensive request for production served on GAI by Ferrant's counsel; seeking summary judgment against Ferrant because he had not initially filed a verified denial to the suit on sworn account; and having prepared for two prior trial settings before the case was actually tried. Counsel added that a reasonable fee for an appeal to the court of appeals would be $12,000 and that fees for a petition for review to the supreme court would be an additional $5,000. On cross-examination, he answered questions about the time he had spent on particular tasks during the case.

**E. Judgment**

The trial court signed a judgment for GAI and against Ferrant for $12,765.54 plus $15,000 in attorney's fees through entry of judgment and conditional attorney's fees in the event of appeal. The trial court also entered findings of fact and conclusions of law. This appeal followed.

### III. Standards of Review

In a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Kahn v. Imperial Airport, L.P.,* 308 S.W.3d 432, 437 (Tex. App.—Dallas 2010, no pet.) (citing *LaCroix v.*

8

*Simpson*, 148 S.W.3d 731, 734 (Tex. App.—Dallas 2004, no pet.)). We are not a fact-finder and may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence would support a different result. *Kahn*, 308 S.W.3d at 437 (citing *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)). A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a

reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When the party with the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

## IV. Discussion

In three issues, Ferrant challenges the sufficiency of the evidence to support the trial court's findings and judgment.

### A. Ferrant's Personal Liability

Ferrant argues in his first issue that the evidence is legally and factually insufficient to support the trial court's finding that he was personally obligated to

pay GAI $12,765.54 "because: (1) GAI was aware of circumstances which made clear West Fort Worth Child Care was obligated under the contract and (2) GAI waived its right to claim the remaining amount of $4,423.86 allegedly payable on the promissory note."

### 1. Agency

The Dallas Court of Appeals summarized the law applicable to Ferrant's affirmative defense of agency as follows:

> It is well-settled that the law does not presume agency. *Sw. Bell Media, Inc. v. Trepper*, 784 S.W.2d 68, 71 (Tex. App.—Dallas 1989, no writ). When an agent seeks to avoid personal liability on a contract he signs, it is his duty to disclose that he is acting in a representative capacity and the identity of his principal. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003) (per curiam); *Trepper*, 784 S.W.2d at 71–72. To establish the affirmative defense of agency, a party must prove he made these disclosures. *Trepper*, 784 S.W.2d at 71. A person who fails to disclose that he is signing a contract as an agent may be held liable on the contract. *Id.*

*Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 200 (Tex. App.—Dallas 2011, no pet.). That court more recently wrote,

> The burden is not on the party dealing with the agent to discover the existence of the relationship merely because he had a means of discovering the agent's representative capacity. *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *Anderson v. Smith*, 398 S.W.2d 635, 637 (Tex. Civ. App.—Dallas 1965, no writ). Actual knowledge of the existence and identity of the principal is required; the contracting party's suspicion is not sufficient. *Trepper*, 784 S.W.2d at 71.

*John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 657 (Tex. App.—Dallas 2013, pet. denied). These recitations of the law applicable to this case are consistent with those from this and other Texas courts. *See Gordon v.*

*Leasman*, 365 S.W.3d 109, 114–15 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Posey v. Broughton Farm Co.*, 997 S.W.2d 829, 831–32 (Tex. App.—Eastland 1999, pet. denied); *Lacquement v. Handy*, 876 S.W.2d 932, 939 (Tex. App.—Fort Worth 1994, no writ); *see also EID Corp. v. Fort Worth-Tarrant Sunbelt, Inc.*, No. 02-05-00261-CV, 2006 WL 1562665, at *4–5 (Tex. App.—Fort Worth Jun. 8, 2006, no pet.) (mem. op.).

Arguing that he is not personally liable to GAI, Ferrant points to evidence that Winkler originally sent the GAI contract to Griggs, the architect for the project; that Ferrant signed the contract as "CFO"; that GAI only performed services at the West Fort Worth Day Care site; that GAI was paid with checks issued from Compass Children's Academy; and that GAI knew the difference between signing in an individual or representative capacity because it required that Ferrant sign the promissory note "individually." Ferrant argues that "even if [he] did not reveal his principal when executing the contract, the evidence establishes that the surrounding circumstances indicate there was such a principal of which GAI was aware." GAI counters that "the name West Fort Worth Day Care, LLC is completely absent from the written agreement"; that Ferrant never identified himself to GAI as CFO of any particular company; and that GAI personnel only met with Ferrant during the project and contacted Ferrant when they needed owner input.

Ferrant had the burden of proof at trial on his affirmative defense of agency. *See John C. Flood of DC, Inc.*, 408 S.W.3d at 657; *Gordon*, 365 S.W.3d

at 114–15. Even if writing "CFO" in the blank for "title" on the contract was sufficient to disclose that Ferrant was acting in a representative capacity, the remaining evidence does not conclusively show that Ferrant disclosed the true identity of his principal at the time he entered into the contract. *See Trepper*, 784 S.W.2d at 72 (holding that even though alleged agent signed as president, he "failed in his second duty because he did not disclose his true principal" and that alleged agent therefore "assumed personal liability when he signed the contract"). Nor is the trial court's failure to find that Ferrant was an agent against the great weight and preponderance of the credible evidence. Ferrant admitted that the contract does not mention "West Fort Worth Day Care, LLC" anywhere within it, that only the words "West Fort Worth" appear, and that "CFO" alone does not identify the entity for which he was acting when signing the contract. *See id.* Wagnon and Winkler testified that Ferrant never identified himself as working for a particular company. Indeed, Ferrant never testified that he told Winkler or Wagnon that he was acting as CFO for West Fort Worth Day Care, LLC, only that he did not *intend* to have personal liability for the contract.[2] We hold that the evidence is legally and factually sufficient to support the trial court's determination that Ferrant is personally liable on the contract. *See John C. Flood of DC, Inc.,* 2013 WL 3963722, at *10; *Gordon*, 365 S.W.3d at 114–15; *Pierce*, 343 S.W.3d at 200; *Posey*, 997 S.W.2d at 831–32. Ferrant has not shown that

---

[2]The record is silent as to whether West Fort Worth Day Care, LLC is an actual legal entity that existed at the time Ferrant signed the contract.

13

he conclusively proved his affirmative defense, *see Francis*, 46 S.W.3d at 241 (discussing legal sufficiency), or that the trial court's failure to find for him on his affirmative defense is against the great weight and preponderance of the credible evidence. *See Gonzalez*, 195 S.W.3d at 681–82; *Francis*, 46 S.W.3d at 242 (both discussing factual sufficiency). We overrule the first part of Ferrant's first issue.

### 2. Waiver

Ferrant argues in the second part of his first issue that GAI waived the right to recover the $4,423.86 balance due on the promissory note by executing the waiver and release. "Waiver is an affirmative defense for which [Ferrant] bore the burden of proof at trial." *Five Star Int'l Holdings Inc. v. Thomson, Inc.*, 324 S.W.3d 160, 165 (Tex. App.—El Paso 2010, pet. denied) (citing Tex. R. Civ. P. 94; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 481 (Tex. 2001)).

Wagnon executed the waiver and release on December 11, 2009, as CEO of GAI. In relevant part, the waiver and release stated that GAI had received $31,631.99 "for labor, services, equipment or material furnished to [GAI] . . . and does hereby release any mechanic's liens, stop notice or bond right that the undersigned has . . . for labor, services, equipment or materials furnished through November 30, 2009 only." Ferrant argues that because the promissory note, executed in October 2009, preceded the waiver and release, GAI waived any right to recover on the promissory note by executing the waiver and release. We disagree because the waiver and release only purported to waive GAI's

14

rights with regard to mechanic's liens, stop notices, or bonds. The waiver and release says nothing about foregoing any right to sue Ferrant. Indeed, Wagnon testified that he signed the waiver and release to help Ferrant obtain SBA loan proceeds, not as a release of Ferrant's obligation to pay the balance of the promissory note, and that the $31,631.99 amount includes the outstanding balance on the promissory note. Because the plain language of the waiver and release does not preclude GAI's right to sue Ferrant for recovery on the promissory note, we overrule the remainder of Ferrant's first issue.

## B. Consideration for Promissory Note

Ferrant contends in his second issue that there is legally and factually insufficient evidence of consideration for the promissory note and that it is therefore not enforceable. "Consideration is a present exchange bargained for in return for a promise." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). "It consists of either a benefit to the promisor or a detriment to the promisee." *Id.*

Ferrant argues that GAI did not perform any services for him individually, that GAI only performed services at the West Fort Worth Child Care site, and that GAI expressly waived its right to recover payments for labor, services, equipment, or materials furnished before November 30, 2009. We held above that Ferrant is individually liable to GAI on the contract and that GAI did not waive its right to recover payment from Ferrant. Moreover, Wagnon testified that he agreed to the promissory note to facilitate Ferrant's ability to resolve his SBA

15

loan problems and that Ferrant "got something from the promissory note" because Ferrant had no money to pay GAI and would have been shut down had GAI not allowed Ferrant to give the promissory note as payment. Winkler testified that Ferrant was told that GAI would do no additional work on the project unless Ferrant signed the promissory note and that GAI performed additional work after Ferrant signed it. Wagnon's and Winkler's testimony presented legally and factually sufficient evidence of consideration. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185–86 (Tex. App.—Fort Worth 1995, no writ); *see also Gonzalez*, 195 S.W.3d at 681–82; *Francis*, 46 S.W.3d at 241–42. We overrule Ferrant's second issue.

## C. Attorney's Fees

Ferrant contends in his third issue that the evidence "was not legally sufficient" to support the award of $15,000 in attorney's fees. In his opening brief, Ferrant relies exclusively on the supreme court's opinion in *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012) and argues that the attorney's fees award must be reversed because GAI failed to present contemporaneous billing records or other documentary evidence under the lodestar method of proving attorney's fees to show the services performed, who performed them, the hourly rates, and when the services were performed. GAI responds, in part, that *El Apple* does not apply. We agree with GAI.

Since *El Apple*, several of our sister courts have held that *El Apple* does not require admission of hourly time records in all cases. *See, e.g.*, *Metroplex*

16

*Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (noting Texas courts have not required documentary evidence to substantiate claims for attorney's fees); *Circle Ridge Prod., Inc. v. Kittrell Family Minerals, LLC*, No. 06-13-00009-CV, 2013 WL 3781367, at *7 (Tex. App.—Texarkana July 17, 2013, pet. denied) (mem. op.) (noting lodestar method does not apply in cases other than Texas Commission on Human Rights and class-action suits); *Concert Health Plan, Inc. v. Houston Nw. Partners, Ltd.*, No. 14-12-00457-CV, 2013 WL 2382960, at *9 n.17 (Tex. App.—Houston [14th Dist] May 30, 2013, no pet.) (mem. op.) ("While the Texas Supreme Court recognized the lodestar method as the required method for claims under Section 21.259(a) of the Texas Commission on Human Rights Act and in class-action lawsuits, the [*El Apple*] opinion does not require the lodestar method in other types of lawsuits.").[3] We do not read *El Apple* to mean that evidence of attorney's fees is legally insufficient in an ordinary, non-lodestar, hourly-fee breach of contract case unless contemporaneous time records are admitted into evidence.[4]

---

[3]The supreme court, itself, recently clarified that *El Apple* does not hold that the lodestar method of proof can only be satisfied by time records or billing statements. *City of Laredo v. Montano*, 414 S.W.3d 731, 735–37 (Tex. 2013).

[4]To the extent Ferrant relies on our opinion in *Toshiba Mach. Co., America v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782–84 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.), to support his argument that the lodestar method discussed in *El Apple* applies in all breach of contract cases, that case is distinguishable. SPM had a blended contingent-fee agreement with its attorneys in that case, and we noted that "Texas courts consistently allow the

Ferrant makes several other arguments complaining of the legal sufficiency of the evidence to support the award of attorney's fees for the first time in his reply brief, specifically that GAI's counsel's testimony was conclusory, that GAI failed to prove the reasonableness of its attorney's fees under the traditional standard, and that the award of $15,000 exceeds the damages awarded and is, therefore, "patently unreasonable." New issues raised for the first time in an appellant's reply brief will ordinarily not be considered. *See, e.g.*, *Fin & Feather Club v. Leander*, 415 S.W.3d 548, 558 n.23 (Tex. App.—Texarkana 2013, pet. denied); *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 72 (Tex. App.—San Antonio 2011, no pet.); *MBR & Assocs., Inc. v. Lile*, No. 02-11-00431-CV, 2012 WL 4661665, at *4 n.7 (Tex. App.—Fort Worth Oct. 4, 2012, pet. denied) (mem. op.). However, "[t]he appellant may file a reply brief addressing any matter in the appellee's brief." Tex. R. App. P. 38.3. In its appellee's brief (in addition to its argument that *El Apple* does not apply), GAI sets forth a six-page response to Ferrant's issue as originally framed in his opening brief, fully briefing its arguments that the evidence was legally sufficient to support the trial court's award of attorney's fees, essentially anticipating

---

use of a multiplier based upon the contingent nature of a fee under Texas statutes allowing recovery of attorney's fees." *Id.* at 783. This is not a contingent-fee case, nor is it a class action or suit under the Texas Commission on Human Rights Act.

Ferrant's newly asserted arguments.[5]  We will review the arguments raised in his reply brief as responsive to GAI's brief.  *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (considering issue first raised in reply as responsive to appellee's response); *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.) (same); *Bennett v. Coghlan*, No. 01-04-00104-CV, 2007 WL 2332969, *4 n.7 (Tex. App.—Houston [1st. Dist.] Aug. 16, 2007, pet. denied) (mem. op.) (considering issue raised for first time in reply where it had been "fully briefed" by appellee in his response).

## 1. Reasonableness

In GAI's response, it included a discussion of the reasonableness factors listed in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  As GAI noted, courts are not required to receive evidence on every one of those factors to award attorney's fees.  *State & Cnty. Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 408 n.8 (Tex. App.—Fort Worth 2007, no pet.).  In addition to those factors, the court may consider the entire record and the common knowledge of the lawyers and judges.  *See In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.).  Under the traditional method of

---

[5]We are mindful of the Supreme Court of Texas's admonitions that "[d]isposing of appeals for harmless procedural defects is disfavored and that "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (citing *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) and *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)).

19

awarding fees, documentary evidence is not a prerequisite. *See In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.). Time sheets or other detailed hour calculations are not required if the testimony regarding the hours of work required is not speculative. *See Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 772 (Tex. App.—Dallas 2007, pet. denied).

Testimony from an attorney that fees are reasonable and necessary is legally sufficient if supported by facts relevant to the *Arthur Anderson* factors for determining reasonableness. *See Walker*, 228 S.W.3d at 408–09 (citing *Arthur Andersen*, 945 S.W.2d at 818); *Dodd v. Savino*, No. 14-12-00555-CV, 2014 WL 242881, at *13 (Tex. App.—Houston [14th Dist.] Jan. 16, 2014, no pet. h.). "It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award." *Metroplex Mailing Servs., LLC*, 410 S.W.3d at 900; *In re A.B.P.*, 291 S.W.3d at 99; *see also Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP*, 422 S.W.3d 821, 846 (Tex. App.—Dallas 2014, no pet.).

### 2. Not Conclusory

Testimony from the lawyer representing the client in litigation is the opinion testimony of a lawyer testifying as an expert witness, and although "rooted in the attorney's experience and expertise, it also consists of the attorney's personal knowledge about the underlying work and its particular value to the client." *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010). The attorney's opinion testimony is thus not objectionable on that basis as merely conclusory. *Id.*

20

Moreover, the testimony is not conclusory when, as here, opposing counsel likewise has some idea of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney about the reasonableness or necessity of his fee. *Id.*; *see also Ropa Exploration Corp. v. Barash Energy, Ltd.*, No. 02-11-00258-CV, 2013 WL 2631164, at *11 (Tex. App.—Fort Worth 2013, pet. denied) (mem. op) (holding expert testimony not conclusory where attorney explains basis of his charges and sufficiently links his opinions to the facts). "[A] reasonable hourly rate multiplied by the number of hours spent performing necessary services . . . yields a reasonable fee." *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 580 (Tex. 2012).

### 3. Not "patently unreasonable"

Ferrant also argues that the attorney's fees awarded by the trial court are "patently unreasonable" because they are greater than the total damages awarded to GAI. But while attorney's fees must have some reasonable relation to the damages awarded, there is no rule that they cannot exceed the damages awarded. *See Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 441 (Tex. App.—Dallas 2011, pet. denied); *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 209–10 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

GAI's counsel testified to his decades of experience as an attorney in Tarrant County, the nature of his practice including commercial litigation, and the nature and length of his professional relationship with GAI, having originally

incorporated the company. He described the computerized method he used to track his time, and he testified that he spent more than 60 hours at a rate of $300 per hour working on the case and that $300 per hour is the customary rate for such services in Tarrant County and is the rate he normally charges. He further testified as to the specific work he did on the case, including filing the petition, conducting discovery, moving for summary judgment, conducting depositions, and other matters. GAI's counsel testified that he believed $18,000 in attorney's fees was reasonable and necessary. He also answered questions on cross-examination about the specific amounts of time he spent on various tasks in the case. The trial court did not award the $18,000 in attorney's fees requested by GAI, instead reducing the amount to $15,000. There is ample evidence that the fees testified to by GAI's counsel were reasonable and necessary. We hold that the evidence is legally sufficient to support the attorney's fees award. Accordingly, we overrule Ferrant's third issue.

## V. Conclusion

Having overruled Ferrant's three issues, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED:  May 8, 2014

22